SUSAN M. CHEHARDY, Chief Judge.
|2In this writ application, relator, Jefferson Parish Hospital District No. 1, d/b/a West Jefferson Medical Center (hereinafter “WJMC”), seeks review of the district court’s denial of its motion for summary judgment. For 'the following reasons, we grant this writ of review but deny relief.

Facts and Procedural History

On February 18, 2013, Janet Daniel (hereinafter “Mrs. Daniel”) died during a surgical procedure performed by-Dr. Emery Minnard at WJMC. Mrs. Daniel had survived' a right lung lobectomy in 1996, which removed malignant tumors and part of- her lung. As a result of that surgery and -the consequent radiation treatment, Mrs. Daniel developed scar tissue throughout the thoracic area that, as seen in diagnostic’ tests, caused a shifting of parts of her anatomy, including her trachea and aorta.
In 2012, after Mrs. Daniel developed difficulty in swallowing, tests revealed that she had cancer of the esophagus and stomach that had spread to the lymph nodes. Mrs. Daniel underwent‘two months of radiation and chemotherapy that, as testing revealed, halted the progression of the cancer and' minimized the tumors. | ¡¡Despite this, Mrs. 'Daniel’s x-ray showed sear tissue arid adhesions near thé upper right lung as well as volume loss from that lung. • ■ ■ '
On February 18,"2013, Mrs. Daniel was to undergo a Transhiatal Esophagectomy at WJMC. In the first five minutes of the procedure, Dr. Minnard attempted to “aggressively free the esophagus from connective tissué” with his hand but instead “completely dissected Mrs. Daniel’s aortic arch” causing exsangriiriati'on and cardiac arrest. At 9:14 a.m., which was over one hour later, Mrs. Daniel was pronounced dead.
On September 23, 2013, Mrs. Daniei’s surviving spouse, Paul, and her children, Janine Daniel Dunn and Rene Daniel (hereinafter “the Daniels”), timely filed a request for a Medical Review Panel to determine whether Dr. Minnard, Dr. Mark Kappelman (a referring physician), and/or WJMC had “adhered to the prevailing standard of care for physicians and .hospi- *162 tais in the community. In the evidence presented to the Medical Review Panel, the Daniels contended, among other things, that Dr. Minnard was negligent in recommending and performing surgery and that WJMC was negligent in “failing to supervise or monitor Dr. Minnard.” The Daniels alleged that, prior to this pror cedure but while Dr. Minnard had privileges to practice at WJMC, he was sued for medical malpractice ten times. Further, WJMC had been named in at least two of those lawsuits. The Daniels argued that WJMC breached its duty of supervising health care providers by permitting a physician that it “knew or should have known was unqualified or negligent to practice in its facility.”
On March 5, 2015, the Medical Review Panel found that, among others things, WJMC had not breached the standard of care. The Panel found, however, that Dr. Minnard had breached the standard of care in his operative approach, which was “a factor of the resultant damages.”
pOn October 7, 2015, the Daniels filed a petition for damages alleging medical malpractice against Dr. Minnard, Dr. Kappel-man, and WJMC. On December 10, 2015, WJMC. moved for summary judgment, “based upon prescription, seeking dismissal of the one (1) medical malpractice claim and numerous administrative negligence claims.” In its motion, WJMC alleged two countervailing arguments: first, that the Daniels’ claims of “administrative negligence” by WJMC are general negligence claims, not medical malpractice claims, which are prescribed as they were filed more than one year after the patient’s death; and second, the Daniels’ claims are medical malpractice claims that were not presented to the Medical Review Panel and, thus, are prescribed. The Daniels opposed summary judgment pointing out that their claims against WJMC for failure to supervise and/or monitor a surgeon on its staff who was operating in its facility sound in medical malpractice. The Daniels noted specifically that, prior to the surgery in question, WJMC was named in at least two of ten medical malpractice lawsuits filed locally against Dr. Minnard during his tenure at WJMC.
On March 17, 2016, the trial judge heard and denied WJMC’s motion for summary judgment. On March 30, 2016, the trial judge signed a written judgment of denial, which was issued on April 1, 2016. WJMC noticed its intent to seek review and the trial judge set the return date for April 29, 2016. WJMC timely filed its writ application with this Court. Further, in order to properly consider this writ application in accordance with La. C.C.P. art. 966(H),[1] the writ application was docketed for argu-mént pursuant to U.R.C.A. Rule 4-7. This opinion follows.
| fJLaw and Argument

Standard of Review

 First, we note that although typically asserted through the procedural vehicle of the peremptory exception, the defense of prescription may also be raised by motion for summary judgment. Hogg v. Chevron USA, Inc., 09-2632 (La.7/06/10), 45 So.3d 991, 997; Alcorn v. City of Baton Rouge, Baton Rouge Police Department, 03-2682 (La.1/16/04), 863 So.2d 517; Doe v. Jones, 02-2581 (La.App. 1 Cir. 9/26/03), *163 857 So.2d 555, 557; Labbe Service Garage, Inc. v. LBM Distributors, Inc., 94-1043 (La.App. 3 Cir. 2/1/95), 650 So.2d 824, 829. When prescription is raised by motion for summary judgment, review is de novo, using the same criteria used by the district court in determining whether summary judgment is appropriate. Doe, 857 So.2d at 557-558.
The version of La. C.C.P. art. 966[2] in effect at the time of the summary judgment hearing in this case provides, “a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(A)(3). Further, La. C.C.P. art. 966(A)(4) reads, “The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers' to interrogatories, certified medical records, written stipulations, and admissions.”
The burden is on the party seeking summary judgment to establish that there is an absence of ^factual support for one or more of the essential elements of the adverse party’s claims. However, if the mov-ant will not bear the burden of proof at trial, the movant need only point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim. La. C.C.P. art. 966(D)(1).
Here, WJMC, the movant, has the burden of proof. La. C.C.P. art. 966(D)(1). As WJMC will not bear the burden of proof at trial, it needs only point out “an absence of factual support for one or more elements essential to” the Daniels’ claims. The decision as to the propriety of the ruling on a motion for summary judgment must be made with reference to the substantive law applicable to the case, Muller v. Carrier Corp., 07-770 (La.App. 5 Cir. 4/15/08), 984 So.2d 883, 885.

Substantive Law

On review, WJMC avers that the trial court erred in denying.summary judgment for two reasons: first, the Daniels’ “administrative negligence” claims are cognizable as general negligence claims, which should have been raised via ordinary process within one year of Mrs. Daniel’s death, and, thus, have “irredeemably prescribed;” and second, if the Daniels’ “administrative negligence” claims fall under the definition of medical malpractice, the claims are still prescribed because the claims must first be presented to a medical review panel but the Daniels failed to “articulate” their claims against WJMC in their request.
Our. first inquiry is whether the claims in question fall within the definition of medical malpractice. The law in effect on the date of Mrs. Daniel’s surgery defined “malpractice” as “any unintentional tort ... based on health care ... services rendered, or which should have been rendered, by a health care provider, to a patient, including ... all legal responsibility of a health care provider arising ... in the training or supervision of health care providers_” La. R.S. 1740:1299.41(A)(13).[3] “Negligent supervision is specifically defined as an act of malpractice under the [Medical Malpractice Act]; as of the 2001 amendment....” Dinnat v. Texada, 09-665 (La.App. 3 Cir. 2/10/10), 30 So.3d 1139, 1142. Thus, the *164 claims sound in medical malpractice and are properly considered in a malpractice action.
Next, we must determine whether the claims were presented to the medical review panel and, thus, preserved for litigation. WJMC contends that the Daniels, in their request for a medical review panel, failed to state sufficient facts surrounding the alleged malpractice against it to encompass the alleged “administrative negligence” claims raised against it.
The Medical Malpractice Act (“MMA”) provides limitations on liability and other advantages to healthcare providers that are in derogation of the rights of tort victims and, therefore, must be strictly construed. Perritt v. Dona, 02-2601 (La.7/2/03), 849 So.2d 56, 61; Sewell v. Doctors Hospital, 600 So.2d 577 (La.1992). The MMA requires that all claims against health care providers be reviewed or “filtered” through a medical review panel process before proceeding to any court. Id. The medical review panel process begins with the filing of a request in accordance with La. R.S. 40:1299.47(A).[4] The Louisiana Supreme Court, |showever, has discussed the distinction between a request for review to initiate a medical review proceeding and a petition to initiate a lawsuit. In Perritt, the Court found that a “claim is not required to be a fact pleading with the specificity that may be required of a petition in a lawsuit; rather, the claim need only present sufficient information for the panel to make a determination as to whether the defendant is entitled to the protection of the. Act.” Perritt, 849 So.2d at 65.[5]
Subsequent to-the Perritt decision, an amendment to La. R.S. 40:1299.47(A) became effective August 15, 2003,. which sets forth the minimum statutory requirements for a request for review under, the MMA. As to the facts alleged in the claim- or request, the statute requires only “a brief description of the alleged malpractice as,to each named defendant health care provider.” Louisiana appellate courts have found that the statute “does not mandate the type of fact pleading required in a court petition” and that “[t]he requirement *165 for a ‘brief description of the alleged malpractice is in line with the pre-amendment law of Perritt, supra, that the claimant ‘need only present sufficient information for the panel to make a determination as to whether the defendant is entitled to the protection of the [MMA].’ ” Ward v. Vivian Healthcare & Rehab. Ctr. (In re Med. Review Panel of Watson), 47,649 (La.App. 2 Cir. 05/15/13), 116 So.3d 870, 876 (finding that the language “the provider [nursing home] did not provide proper care for [the patient] which caused his death” was sufficient to constitute a “brief description of the alleged malpractice” and set forth a valid claim or request under the MMA), citing Perritt, supra; see also Miller v. Crescent City Health Care Ctr., 08-1347 (La.App. 4 Cir. 05/28/09), 24 So.3d 891, 895.
InOur review of the writ application and opposition reveal that the Daniels specifically presented the question of whether WJMC failed to supervise and/or monitor Dr. Minnard to the medical review panel. Thus, the requirement of La. R.S. 40:1299.47(A)(1) and B(l)(a)(i) have been fulfilled.

Conclusion

Upon review, we find no error in the trial court’s denial of summary judgment in favor of WJMC. Accordingly, although the writ application' is granted,, relief is denied.

WRIT GRANTED; RELIEF DENIED

. Pursuant to Acts 2015, No. 422, § 1, effective January 1, 2016, La. C.C.P. art. 966 was extensively revised. In that revision, La. C.C.P. art. 966(H), which reads as follows', was added: "On review, an appellate court shall not reverse a trial court’s denial of a motion for summary judgment and grant'a summary judgment dismissing a case or a party without assigning the case for briefing and permitting the parties an opportunity to request oral argument.”

. As noted infra, pursuant to Acts 2015; No. 422, § 1, effective January 1, 2016, La. C.C.P. art. 966 was extensively revised.

. In Acts 2015, No. 323, § 1, eff. August 1, 2015, La. R.S. 40:1299.41 etseq. were renumbered to R.S.. 40:1231.1 et seq. by the Louisiana Law Institute. The definition of malpractice is now found at La. R.S. 40:1231.1(A)(13).

. La. R.S. 40:1299,47(A)(1)'provides:
(a) All malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided for in this Section. The filing of a request for review by a medical review panel as provided for in this Section shall not be reportable by any health care provider, the Louisiana Patient’s Compensation Fund, or any other entity to the Louisiana State Board of Medical Examiners, to any licensing authority, committee, or board of any other- state, or to any credentialing or similar agency, committee, or board of any clinic, hospital, health insurer, or managed care company.
(b) A request for review of a malpractice claim or malpractice complaint shall contain, at a minimum, all of the following:
(i)A request for the formation of a medical review panel.
(ii) The name of only one patient for whom, or on whose behalf, the request for review is being filed; however, if the claim involves the care pf a pregnant mother and her unborn child, then naming the mother as the patient shall be sufficient."
(iii) The names of the claimants.
(iv) The names of defendant health care providers.
(v) The dates of the alleged malpractice.
(vi) A brief description of the "alleged malpractice as to each named defendant state health care provider.
(vii) A brief description of alleged injuries.

. See also, Justice Weimer’s concurring opinion in Perritt, 849 So.2d at 67, pointing out the legislature’s intentional use of the term "claim” rather than the known term "petition” within La. R.S. ,40:1299.47(A) and discussing the distinction as to fact-pleading therein.